IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| In re: ) | |
| ) | |
| Michael P. Dolbec ) | Case No. 25-30154 |
| ) | (Chapter 7) |
| Debtor. ) | |
| _____) | |
| ) | |
| Northwoods Lumber Company ) | |
| ) | Adv. Case No. 25-07023 |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| Michael P. Dolbec ) | |
| ) | |
| Defendant. ) | |

**MOTION TO DISMISS**

Comes now Michael P. Dolbec ("Mr. Dolbec" or the "Debtor" or the "Defendant"), by and through undersigned counsel, pursuant to Federal Rule of Bankruptcy Procedure 7012(b) and Federal Rule of Civil Procedure 12(b)(6), and moves to dismiss the Complaint to Determine Non-Dischargeability of Debt (the "Complaint"), DE #1, filed by Northwoods Lumber Company ("Northwoods" or the "Plaintiff"), and in support thereof states as follows:

I.   **Introduction**

Northwoods is suing Mr. Dolbec, for a finding that his financial obligations to the Plaintiff are nondischargeable, on the interchangeable and alternative theories that (i) Mr. Dolbec agreed, pre-petition, such debt ought to be nondischargeable in bankruptcy; (ii) Mr. Dolbec made one or more false representations concerning his financial condition, in connection with activity giving rise to the underlying indebtedness; and (iii) Mr. Dolbec willfully injured Northwoods.

1

Problematically, however, the Complaint—when exposed to controlling statutory law and applicable precedent—does not nearly support any of these three theories of relief.

To the contrary, case law is plain that a future debtor, no matter how well advised and no matter how dire the circumstances, cannot preemptively agree to regard any indebtedness as nondischargeable in bankruptcy. Similarly, Title 11 of the United States Code (the "Bankruptcy Code"), while providing a discharge exception for monies obtained through false pretenses, expressly excepts therefrom debts incurred where the false pretenses concern an obligor's financial condition. And governing law also instructs that a denial of discharge, on the theory of there being some willful and malicious injury, requires the existence of both willfulness and malice, alongside an underlying tort.

Plainly, Northwoods cannot succeed on a claim premised upon a preemptive contractual waiver of the bankruptcy discharge, militating in favor of dismissal—with prejudice—of Count I of the Complaint. Similarly, Northwoods cannot succeed on a theory that misrepresentations concerning one's financial condition give rise to a finding of nondischargeability, also militating in favor of dismissal—with prejudice—of Count II of the Complaint. And while Northwoods comes well shy of the governing pleading standard in setting forth the current claim for nondischargeability on account of willful and malicious injury, such is at least a theoretically plausible claim for relief and would normatively be meritorious of dismissal without prejudice.

The foregoing notwithstanding, dismissal of the Complaint should be with prejudice as to all counts for one added reason: the Plaintiff has neglected to attach the underlying agreement to the pleading. And while such would ordinarily not be cause for dismissal (much less dismissal with prejudice), the omission in this case is particularly noteworthy insofar as an examination of

Case 25-07023   Doc 9   Filed 08/18/25   Entered 08/18/25 13:46:07   Desc Main
Document      Page 3 of 13

the at-issue document reveals Mr. Dolbec (i) never agreed to have any indebtedness of his own deemed nondischargeable; and (ii) has actually been fully released by the Plaintiff.

This cannot be sufficiently stressed: Northwoods is suing for a declaration Mr. Dolbec's obligation is nondischargeable, and premising at least part of that suit on a settlement agreement to which Mr. Dolbec is not a party. Northwoods is also neglecting to mention that it has released any claim against Mr. Dolbec on the underlying debt.

**II.     Standard**

Familiarly, Federal Rule of Civil Procedure 12(b)(6)—made applicable by Federal Rule of Bankruptcy Procedure 7012—permits the defense of "failure to state a claim upon which relief can be granted" to be asserted through a preliminary motion. Fed. R. Civ. P. 12(b)(6). In assessing one such motion, "the Court assumes all facts alleged in the complaint are true and makes reasonable inferences in favor of the nonmoving party." *Finstad v. Gord (In re Finstad)*, Nos. 05-31470, 18-07060, 2019 Bankr. LEXIS 4017, at *7 (Bankr. D.N.D. Oct. 21, 2019) (citing *Ryan v. Ryan*, 889 F.3d 499, 505 (8th Cir. 2018)).

However, while the allegations of a pleading are presumed true for purposes of a Rule 12(b)(6) motion, "[t]he complaint 'must show the plaintiff is entitled to relief, by alleging sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Du Bois v. Bd. of Regents of the Univ. of Minn.*, 987 F.3d 1199, 1202 (8th Cir. 2021) (quoting *BNSF Ry. Co. v. Seats, Inc.*, 900 F.3d 545, 546 (8th Cir. 2018)). And, in turn, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Du Bois*, 987 F.3d at 1202 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

As observed by the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). *See also Nat'l Union Fire Ins. Co. of Pittsburgh v. Cargill, Inc.*, 61 F.4th 615, 620 (8th Cir. 2023) ("Threadbare recitals . . . supported by mere conclusory statements are not sufficient to survive a motion to dismiss.") (quoting *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018)).

### III.     Factual Allegations

Accepting the allegations of the Complaint as true for the sole and limited purpose of this motion, *Du Bois*, 987 F.3d at 1202, the following assertions are pertinently levied by Northwoods:

1.      Mr. Dolbec was the principal shareholder and managing officer of Windsong Contracting, LLC ("Windsong"). *See* Complaint, DE #1, at ¶ 3.

2.      Mr. Dolbec and Windsong were (and/or still are) in the business of supplying building materials to third parties and constructing residential homes. *Id.* at ¶¶ 7-8.

3.      Mr. Dolbec personally obtained credit from Northwoods to finance the purchase of lumber, with Northwoods furnishing some $171,113.99 of goods and materials to Mr. Dolbec on credit terms. *Id.* at ¶¶ 9-10, 16.

4.      Litigation ensued, *id.* at ¶ 11, which was then settled through entry of a stipulation pursuant to which (i) Northwoods would receive a settlement payment of $82,500.00; and (ii) the obligation to make the settlement payment would be nondischargeable in bankruptcy, *id.* at ¶ 12.

5.      The Debtor's failure to honor Northwoods' credit agreement was willful in nature and caused economic injury to Northwoods. *Id.* at ¶ 19.

**IV. Argument: Any Pre-Petition Discharge Waiver is Void**

If people could agree, pre-petition, that specified monetary obligations will be nondischargeable in bankruptcy, it would be foolhardy for the nation's various lenders to not embed such a clause in every credit card agreement, promissory note, and comparable debt-centric arrangement. Yet, almost certainly for precisely this reason, such clauses are void and legally unenforceable. As a byproduct of this reality, Count I of the Complaint—seeking declaratory relief as to the nondischargeable nature of the Debtor's obligations to Northwoods, pursuant to the settlement agreement—should be dismissed with prejudice.

Any contractual agreement concerning the dischargeability of a party's obligation thereunder is not binding in the event of an eventual bankruptcy and, to the contrary, is necessarily void. *See, e.g.*, *Spyke, Inc. v. Zufall (In re Zufall)*, 2007 Bankr. LEXIS 648, at *7-8 (Bankr. D.S.D. Feb. 21, 2007)[1] ("A prepetition agreement in which the debtor purports to waive the benefits of a bankruptcy discharge is void as against public policy. A state court judgment that incorporates such a prepetition agreement is equally unenforceable.") (citing *Hayhoe v. Cole, (In re Cole)*, 226 B.R. 647, 651-52 n.6 (B.A.P. 9th Cir. 1998) (citing *Giaimo v. Detrano (In re Detrano)*, 222 B.R. 685, 688 (Bankr. E.D.N.Y. 1998)); *Shaw Steel, Inc. v. Morris (In re Morris)*, 1998 Bankr. LEXIS 765, 1998 WL 355510, at *8 (Bankr. N.D. Ill. June 30, 1998); *Chilcoat v. Minor (In re Minor)*, 115 B.R. 690, 694-96 (D. Colo. 1990); *Doug Howle's Paces Ferry Dodge, Inc. v. Ethridge (In re Ethridge)*, 80 B.R. 581, 586 (Bankr. M.D. Ga. 1987); *First Georgia Bank v. Halpern (In re Halpern)*, 50 B.R. 260, 262 (Bankr. N.D. Ga. 1985); *Johnson v. Kriger (In re Kriger)*, 2 B.R. 19, 23 (Bankr. D. Ore. 1979); *Klingman v. Levinson*, 831 F.2d 1292, 1296 n.3 (7th Cir. 1987); *The*

---

[1] A copy of this case—for which undersigned counsel cannot locate a Westlaw citation—is attached hereto as Exhibit A.

*Bank of China v. Huang (In re Huang)*, 275 F.3d 1173, 1177 (9th Cir. 2002); *Hester v. Daniel (In re Daniel)*, 290 B.R. 914 (Bankr. M.D. Ga. 2003)). *See also In re Cole*, 226 B.R. at 653 (". . . a state court stipulated judgment where the debtor waives his right to discharge is unenforceable as against public policy."); *St. Laurent v. Ambrose (In re St. Laurent)*, 991 F.2d 672, 676 (11th Cir. 1993) (". . . the ultimate issue of dischargeability is a legal question to be addressed by the bankruptcy court in the exercise of its exclusive jurisdiction to determine dischargeability."); *92 Palm Foods LLC v. Fundamental Capital LLC*, 2023 N.Y. Misc. LEXIS 5403, n.1, 2023 WL 5921485, n.1 (Sup. Ct. Suffolk Co. N.Y. 2023) ("Parties are not free to contract around dischargeability of debt.").

Equally, and as discussed in greater detail *infra*, a contract cannot provide for a breach thereof to be nondischargeable for the simple reason that ". . . nothing in the Bankruptcy Code provides for non-dischargeability of a debt for breach of contract." *Sandak v. Dobrayel (In Re Dobrayel)*, 287 B.R. 3, 24 (Bankr. S.D.N.Y. 2002). Indeed, it is not merely that any such contractual provision is a nullity; it is, too, that the concept propagated by the provision upon which Northwoods relies—that a contractual breach, without more, can be nondischargeable in the first instance—is a legal fiction.[2]

Since the reason for dismissal of Count I is rooted in law (pre-petition discharge waivers are void as against public policy) and not inartful pleading (merely falling shy of the rigors of *Iqbal* and *Twombly*), dismissal of this cause of action should be with prejudice. This is not a problem that can be cured with more deliberate pleading and, as such, any effort to replead the claim would

---

[2] A contractual breach *can* be nondischargeable if accompanied by—or achieved through—tortious conduct. And while judgment need not be entered on a freestanding tort, *Luebbert v. Glob. Control Sys. (In re Luebbert)*, 987 F.3d 771, 782 (8th Cir. 2021), there is still a requirement that some independent tort accompany a contractual breach for a finding of nondischargeability to ensue.

6

be legally futile in nature. *See, e.g.*, *Knowles v. TD Ameritrade Holding Corp.*, 2 F.4th 751, 758 (8th Cir. 2021) ("It is well settled that a district court may dismiss a complaint with prejudice under Rule 12(b)(6) when amendment of a complaint would be futile.") (citing *Pet Quarters, Inc. v. Depository Tr. & Clearing Corp.*, 559 F.3d 772, 782 (8th Cir. 2009)).

V.  **Argument: Count II Merits Dismissal**

The second count of the Complaint seeks a finding of nondischargeability on the premise that credit was obtained through false representations concerning Mr. Dolbec's financial condition. There are two distinct problems with this cause of action, however: (i) a misrepresentation concerning one's financial condition is not grounds upon which to deem a debt nondischargeable; and (ii) the claim comes well shy of the pleading standards established by the Supreme Court in *Iqbal* and *Twombly*, alongside the heightened standards of Rule 9.

As a starting point, the operative statutory language is illustrative in showing why representations concerning financial condition do not give rise to findings of nondischargeability:

> A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt . . . (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by— (A) false pretenses, a false representation, or actual fraud, **other than a statement respecting the debtor's or an insider's financial condition**. . .

11 U.S.C. § 523(a) (emphasis added).

The latter part of that statutory provision—excepting statements about a debtor's financial condition—would appear to be facially dispositive of a claim for nondischargeability premised upon allegedly false statements about a debtor's financial condition. And this language, representing a carefully-crafted Congressional exception to the nondischargeability provisions of Section 523, is well rooted in a history dating back to 1926. *Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. 709, 721 (2018) (discussing the history of the subject language).

7

In *Lamar*, the Supreme Court made clear that the exception concerning statements about a debtor's financial condition should be regarded in palpably broad terms, encompassing not only generalized assertions but, too, statements that concern so much as a single asset:

> Had Congress intended §523(a)(2)(B) to encompass only statements expressing the balance of a debtor's assets and liabilities, it could have so specified--e.g., "statement of the debtor's financial condition." The Court also agrees that a statement is "respecting" a debtor's financial condition if it has a direct relation to or impact on the debtor's overall financial status. A single asset has a direct relation to and impact on aggregate financial condition, so a statement about that asset bears on a debtor's overall financial condition and can help indicate whether a debtor is solvent or insolvent. A statement about a single asset, thus, can be a "statement respecting the debtor's financial condition."

*Lamar*, 584 U.S. at 710.

Insofar as the Complaint makes clear that the statement(s) being relied upon, in furtherance of Count II, are "false representations about [the Debtor's] financial condition and ability to repay such debt," Complaint, DE #1, at ¶ 16, it is evident this claim fails as a matter of law. Since such a legal shortcoming cannot be cured by amendment, dismissal ought to be with prejudice under *Knowles*.

Yet a second problem dovetails with the foregoing: the Complaint does not actually identify the allegedly false statement about Mr. Dolbec's financial condition. Quite sincerely, it is entirely unclear what falsity is being alleged or even what statement is being referenced. The Complaint does not make clear if the putatively false statement was contained in the stipulation of dismissal of the state court litigation or, rather, came in conjunction with the pre-litigation procurement of credit. Nor does the Complaint explain what made the statement objectively false in nature.

Indeed, Count II of the Complaint is a patent exercise in the sort of threadbare recitals forbade by the Supreme Court in *Iqbal*, whilst also eschewing the heightened pleading standards

of Rule 9.[3] And it thusly follows that dismissal would still be proper (albeit with leave to amend) even if this cause of action were not statutorily doomed by Congress' deliberate carve-out allowing the discharge of liabilities stemming from false statements concerning one's financial condition.

VI. **Argument: Count III Does Not State a Claim for Relief**

The final cause of action in the Complaint seeks a finding of nondischargeability on account of willful injury. Problematically, however, it is—very genuinely—unclear what qualifying willful injury is being alleged to have been perpetrated by Mr. Dolbec. The brevity of the pleading, juxtaposed to the high burden attendant to such a claim, creates a paradigm whereby it is unclear what wrongful activities are actually being alleged or how they would give rise to such extraordinary relief.

As noted by the Supreme Court, "the Bankruptcy Code contains broad provisions for the discharge of debts," *Lamar*, 584 U.S. at 715, subject only to certain exceptions, *id.* The high court has separately made clear those exceptions to such discharge must be ". . . confined to those plainly expressed." *Kawaauhau v. Geiger*, 523 U.S. 57, 62 (1998) (quoting *Gleason v. Thaw*, 236 U.S. 558, 562 (1915)).

Here, the Plaintiff invokes the portion of the Bankruptcy Code that provides an exception to discharge "for willful and malicious injury by the debtor to another entity or to the property of

---

[3] Notably, "[c]laims for relief under § 523(a)(2)(A) generally involve allegations of fraud and, therefore, must be pleaded with particularity in accordance with the requirements of FRCP 9(b)." *Kim v. Mendenhall (In re Mendenhall)*, 654 B.R. 798, 809-10 (Bankr. W.D. Wash. 2023). *See also Stoner v. Keirns (In re Keirns)*, 628 B.R. 911, 918 (Bankr. S.D. Ohio 2021) ("Federal Rule of Civil Procedure 9(b), made applicable to adversary proceedings by Bankruptcy Rule 7009, provides that a party alleging fraud or mistake 'must state with particularity the circumstances constituting fraud or mistake.' This heightened pleading standard has been applied to complaints under § 523(a)(2)(A).") (citing Fed. R. Civ. P. 9(b); *SFS Check, LLC v. First Bank of Del.*, 774 F.3d 351, 358 (6th Cir. 2014); *Bennett v. Lindsey (In re Lindsey)*, 733 F. App'x 190, 192 (5th Cir. 2018); *Fabian v. Goss (In re Goss)*, 605 B.R. 189, 198 (Bankr. S.D. Ohio 2019)).

another entity," 11 U.S.C. § 523(a)(6). *See* Complaint, DE #1, at ¶ 19. The pleading itself, however, does not set forth the requisite supporting allegations.

As a starting point, the exception enshrined in Section 523(a)(6) is one only applicable to actions that are, conjunctively, both willful *and* malicious. *See, e.g.*, *Blocker v. Patch (In re Patch)*, 526 F.3d 1176, 1180 (8th Cir. 2008) ("To establish that a debt is nondischargeable consistent with this exception, the party seeking to prevent discharge must show by a preponderance of the evidence that the debt is for both 'willful . . . injury' and 'malicious injury.'") (quoting 11 U.S.C. § 523(a)(6); *Fischer v. Scarborough (In re Scarborough)*, 171 F.3d 638, 641 (8th Cir. 2008)).

Here, the Complaint does not appear to allege any "malicious" injury whatsoever. Indeed, neither the word "malice" nor any conjugated iteration thereof appears anywhere in the pleading. *See* Complaint, DE #1, *passim*. And such is not an exercise in form over substance, or a qualm aimed at the forbade contours of threadbare recitals: there do not appear to be any allegations, or any combination of allegations, in the Complaint, that would even vaguely invite an inference of malice being afoot. Northwoods is alleging Mr. Dolbec incurred debt, agreed to a settlement agreement, and then sought bankruptcy protection; if seeking chapter 7 recourse, in lieu of paying one's previously-stipulated debts, were sufficient to constitute malicious conduct, almost every chapter 7 debtor would be halfway to a Section 523(a)(6) nondischargeability finding.

The Complaint also comes well shy of alleging willfulness. Yes, the Plaintiff does invoke the barebones verbiage in both the title of Count III ("Willful Injury") and one sentence therein ("Defendant, as the principal shareholder and managing officer of Windsong, willfully injured Plaintiff in the amount of $171,113.99"), *id.* at ¶ 19, but there do not exist any accompanying allegations that inform what Mr. Dolbec did of a supposedly willful variety.

10

The Eighth Circuit only allows for contractual breaches to give rise to Section 523(a)(6) claims when they are accompanied by tortious conduct. *See, supra*, n.2. This is, in part, because "'[r]eckless disregard of creditors' economic interests' is insufficient to establish malice." *In re Luebbert*, 987 F.3d at 781 (quoting *In re Long*, 774 F.2d 875, 880 (8th Cir. 1985)). And it follows that while a freestanding judgment premised upon an intentional tort is not a condition precedent to nondischargeability under Section 523(a)(6), "[t]he willfulness requirement is met when the bankruptcy court finds facts showing that the debtor's conduct accompanying the breach of contract amounted to an intentional tort against the creditor." *In re Luebbert*, 987 F.3d at 782.

Here, no intentional tort is identified, much less pleaded, in the Complaint. And, again, this is not a matter of form over substance, where clear indicia of such a tort are found within the pleading but the Plaintiff has simply elected to forbear from identifying the tort by name. Rather, there do not appear to be any combination of allegations in the Complaint that would give rise to liability for any recognized intentional tort. In fact, there do not even appear to be any combination of allegations that would give rise to liability for negligence (the prototypical "unintentional" tort).

In short, the Plaintiff has not alleged malice, has not alleged willfulness except in a threadbare fashion, and has not identified a correlative tort. Count III accordingly does not survive applicable pleading standards and is meritorious of dismissal. While such dismissal would ordinarily be with leave to amend, it is respectfully urged dismissal be with prejudice for the reasons set forth in Section VII, *infra*.

**VII.    Argument: Mr. Dolbec is not a Party to the Settlement Agreement**

The recitation of alleged facts in Section III above is premised, entirely, upon those found within the four corners of the Complaint. Yet this Honorable Court is permitted to also examine documents expressly referenced in—and integral to—the pleading. *Moses.com Sec., Inc. v.*

11

*Comprehensive Software Sys.*, 406 F.3d 1052, 1063 n.3 (8th Cir. 2005). Here, the Complaint expressly references a settlement agreement, going so far as to define the document as "the Stipulation." *See* Complaint, DE #1, at ¶ 12.

The "Stipulation" is a "Settlement and Release Agreement," dated April 26, 2024 (the "Agreement"). *See* Agreement, attached hereto as Exhibit B ("Ex. B"). The document does, as suggested in the Complaint, resolve a state court lawsuit between Northwoods, as the plaintiff, and both Mr. Dolbec and Windsong, as defendants. *Compare* Complaint, DE #1, at ¶¶ 11-12; Agreement, Ex. B, at p. 1 (second recital). And the Agreement does, too, indicate that $82,500.00 will be paid in settlement of the litigation, as suggested by the Complaint. *Compare* Complaint, DE #1, at ¶ 12; Agreement, Ex. B, at § 1.

Yet while the Complaint in this case indicates "[t]he parties settled the lawsuit by executing a stipulation. . .," Complaint, DE #1, at ¶ 12, and that "[t]he parties further stipulated that the Settlement Payment would be non-dischargeable in bankruptcy under 11 U.S.C. § 523(a)," *id.*, the Complaint neglects to mention that Mr. Dolbec is not a party to the agreement. *See* Agreement, Ex. B, *passim*.

The Agreement is solely between Northwoods and Windsong. *Id.* at p. 1 (prefatory clause); p. 6 (signature blocks). Yes, Mr. Dolbec signed in his capacity as the president of Windsong, *id.*, but he assuredly did not sign in his personal capacity, nor is he anywhere therein referenced as personally being a party to the Agreement, *id.*, *passim*.

Most simply stated: The Plaintiff is suing Mr. Dolbec based on an agreement to which he is not a party. While there is no dispute but that the Agreement resolves litigation to which Mr. Dolbec *was* a party, Northwoods has, somehow, completely elided the fact that Mr. Dolbec is not obligated under the Agreement. And, perhaps more troublingly, Northwoods has also elided the

12

fact that Mr. Dolbec is fully released under the Agreement. *See* Agreement, Ex. B, at § 7 (providing a release not merely for Northwoods and Windsong but, too, for "all persons acting by, through, under, or in concert with" either Northwoods or Windsong).

All of which may well render moot the traditional *Iqbal* and *Twombly* arguments, and the equally traditional analysis of Section 523, set forth above. The Plaintiff is suing Mr. Dolbec on a debt for which the Plaintiff has released Mr. Dolbec. It is difficult to see such as anything shy of the sort of incurable problem the Eighth Circuit has recognized as a barrier to affording a litigant leave to amend.

## VIII. Conclusion

WHEREFORE, Mr. Dolbec respectfully prays this Honorable Court (i) dismiss the Complaint with prejudice; and (ii) afford such other and further relief as may be just and proper.

Respectfully Submitted,

Dated: August 18, 2025     By:     /s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
The Dakota Bankruptcy Firm
1630 1st Avenue N
Suite B PMB 24
Fargo, North Dakota 58102-4246
Phone: (701) 394-3215
mac@dakotabankruptcy.com
*Counsel for the Defendant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 18th day of August, 2025, a copy of the foregoing was served electronically upon filing via the ECF system.

/s/ Maurice B. VerStandig
Maurice B. VerStandig

13